13507

STATE v. McCANN

(166 S. E., 411)

*Messrs. H. C. Hammond* and *Gunter & Wilder,* for appellant,

*Mr. B. D. Carter, Solicitor,* for respondent,

November 7, 1932.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BLEASE.

The appellant was convicted in the Court of General Sessions for Aiken County, his Honor, Judge Dennis, presiding, of the crime usually referred to as "breach of trust with fraudulent intent" (see Section 1149, Code of 1932), and was sentenced to imprisonment for one year.

The gist of the indictment was that the appellant was intrusted by Ruth McCann with the keeping and possession "of a certain check and moneys collected thereon of the value of more than two hundred dollars," property of the prosecutrix, and that "with a fraudulent intention" he unlawfully appropriated the check and "proceeds and moneys to his own use and purposes, with the intention of cheating and defrauding" the prosecutrix.

The case grows out of unfortunate family differences as to money. It is not necessary to detail all the testimony for the prosecution and defense. For the purpose of determining the appeal, only essential things need be mentioned.

The proof for the State went to show that the prosecutrix was the widow of Ernest McCann, son of the appellant. The son, sick a long time, with his wife and their baby resided in the appellant's home, in Augusta, Ga., where the son died. The son had a life insurance policy, payable to his wife, on which there was due the sum of $730.00. After the death of her husband, the prosecutrix, Ruth, removed to Clearwater, in Aiken County. Accompanied by the agent of the insurance company, the appellant went to the home of his daughter-in-law, in Clearwater, where the check was delivered by the agent to Ruth. The appellant told Ruth that the debts due for the illness and funeral of the son should be paid right away, and creditors were making demands. Ruth's baby being ill, she could not go in person to Augusta to attend to the matters, so she indorsed the check and turned it over to the appellant. He was instructed by his daughter-in-law "to pay the doctor's bill, the drug bill and the funeral bill and bring the rest back." He had no instructions to pay a grocery bill in Augusta charged to the ap-

pellant. The appellant cashed the check, paid the bills he was instructed to pay, and paid also his grocery bill. He returned shortly to Clearwater and delivered to Ruth $150.00 in cash. She contended that he should have returned the further sum of $206.50 of the money which he had used to pay the grocery account, and that she did not ratify his action.

In his defense, the appellant testified that he was a poor man; on account of the long-continued illness of his son, his services were required at home frequently, and, therefore, he could not work regularly, and added household expenses due to his son's sickness, caused him to get behind with his grocery bill; that the groceries were purchased for the use of his wife, himself, his sick son, his wife, and their baby; that his daughter-in-law, when she gave him the check for the insurance money, agreed to the payment of his grocery bill therefrom.

The appeal here presents four matters, which we shall state in our own order and language, discussing them as stated.

The first, and an important question, is that the Court of General Sessions of Aiken County did not have jurisdiction of the cause, since the crime alleged against the appellant, if committed by him at all, was committed, not in Aiken County, but in Augusta, Ga. It relates to the venue of the alleged offense. To decide it correctly, we shall inquire, briefly, as to the purpose, force, and effect of the "breach of trust" statute.

The law (Section 1149, Code of 1932) was passed in 1866, and is as follows: "Any person committing a breach of trust with a fraudulent intention shall be held guilty of larceny; and so shall any person who shall hire or counsel any other person to commit a breach of trust with a fraudulent intention."

One of the first cases that considered an appeal from a conviction for violation of the statute was *State v. Shirer,*

20 S. C., 392, decided in 1884. Mr. Justice McGowan, for the Supreme Court, said: "The statute does not describe or define the offense. * * * As we understand it, we have no law creating the special offense known as embezzlement, *and the object of our act was simply to enlarge the field of larceny, removing what before might have been a defense for those who received property in trust and afterwards fraudulently appropriated it."* (Italics ours.) (Note—The embezzlement statute, now Section 1510 of the Code, relates to public funds only, and it was not enacted until 1898. See Act February 16, 1898, 22 St. at Large, p. 810.)

Another case in which the "breach of trust" statute was well considered was that of *State v. Butler,* 21 S. C., 353. Some of the declarations of Chief Justice Simpson, who spoke for the Court, were these:

"The act on the subject of breach of trust makes the offense larceny in general terms, and we think when it placed it under the general head of larceny, it partakes of all the incidents thereto, and is governed by the law applicable to larceny as one of the classes of crime whether statutory or common law. * * *

*"When so declared, it* (the statute as to breach of trust) *must be governed in every respect by the laws applicable to the general crime of larceny, one of which is the division into grand and petit."* (Italics added.)

Mr. Justice Hydrick also carefully discussed the effect of the statute in *State v. Posey,* 88 S. C., 313, 70 S. E., 612, 614. There, the defendant was charged with breach of trust with fraudulent intention. On the facts of the case, Mr. Justice Hydrick said: "The indictment * * * might well have been laid for larceny at common law."

The effect of the decisions from which we have quoted is clearly a holding that breach of trust with fraudulent intention, in this State, is nothing more or less than larceny. It might well be termed "statutory larceny," as

distinguished from larceny at common law. The main distinction between the two crimes is this: In common-law larceny, possession of the property stolen is obtained *unlawfully*, while in breach of trust, the possession is obtained *lawfully*. As will be seen by an examination of the cases of *State v. Posey, supra; State v. Gorman*, 2 Nott & McC. (11 S. C. L.) 90, 10 Am. Dec., 576; *State v. Thurston*, 2 McMul. (27 S. C. L.) 382; *State v. Self*, 1 Bay (1 S. C. L.) 242; and *State v. Lindenthall*, 5 Rich. (39 S. C. L.), 238, 57 Am. Dec., 743, if possession of the property is obtained through artifice, trick, or other fraud, then such possession is not lawfully obtained and the crime is larceny at common law, rather than that of breach of trust, as contemplated by the staute.

Under the decisions from which we have quoted, the crime of breach of trust with fraudulent intention is to be governed by the legal principles applicable to the crime of larceny. Accordingly, we next inquire as to the proper venue in cases charging that crime.

The principle is well recognized, generally, that where goods are stoen in one county or State and brought by the thief into a second county or state, the thief may be indicted in either place. 25 Cyc., 85; 16 C. J., 167; 17 R. C. L., 46. This principle was recognized as to districts, now counties, of the State, many years ago. See *State v. Bryant*, 9 Rich. (43 S. C. L.), 113, decided in 1855. The principle was extended to reach the case of property stolen in an adjoining state and brought to this State in the case of *State v. Hill*, 19 S. C., 435, decided in 1883. In the *Hill case*, Mr. Justice McIver, after reviewing decisions from many jurisdictions, on the theory that larceny was a "continuing offense," declared the proper doctrine in the following language: "Where one takes goods from another in any place, under circumstances which make the taking felonious, the possession of the owner, in contemplation of law, continues, and where the goods so taken are

carried into another state, that constitutes a new taking and asportation in that state, for which an indictment for larceny will lie."

On the particular question of venue, the case of *State v. Thurston, supra,* decided in 1842, is quite interesting; it is not only applicable to the matter under consideration, but is practically decisive of the question. The defendant was a common carrier, engaged in transporting goods by boat. He received cotton in Orangeburg district to be delivered by him in Charleston. Beyond the limits of Orangeburg district, he proceeded to appropriate the cotton to his own use with the intention of depriving the true owner of his property. He was indicted and tried in Orangeburg district under the then existing law for larceny. In all probability had the statute relating to breach of trust with fraudulent intention been then in existence, he would have been charged with its violation. The question of venue was directly presented as an issue in the case. The jury were instructed to the effect that before the defendant could be convicted "there must be a taking and carrying away of the goods laid in the indictment, with a felonious intent, in the district of Orangeburg. * * * If when he received the cotton, he intended to carry and deliver it to the consignee, then his subsequent fraudulent appropriation of the cotton to his own use could not make him guilty. But if, when it was delivered to him, he received it with the intention of stealing it, then it was a larceny from the beginning, as laid in Orangeburg district."

In sustaining Thurston's conviction, Judge O'Neall, who both tried him in the lower Court and wrote the opinion for the Supreme Court on the appeal, held that from the felonious acts of appropriation to his own use of the cotton, committed by the defendant beyond Orangeburg district, the jury had the right to infer that he had the necessary felonious intent as to the theft of the cotton when he accepted it in Orangeburg district.

Breach of trust with fraudulent intention, by that especial designation, is, so far as we are advised, peculiar to this jurisdiction. In other states, the crime, as known to us, is called by different names, such as "larceny after trust," "larceny by a bailee," "larceny by false pretenses," and very commonly as "embezzlement." All the offenses are regarded as statutory, and one must look to the respective statutes to ascertain a definition of the crime. In textbooks, law encyclopedias, and digests, references to decisions concerning these offenses are usually found under the title or subject of "embezzlement." The general purpose running through the statutes creating and defining these crimes is, however, the same; to declare as a crime, and usually as one coming within the classification of larceny, acts which were formerly not deemed to be larceny at common law, because of the fact that possession of property had been obtained through the consent of the owner. Breach of trust, therefore, being so similar in its aspects to embezzlement, as the latter crime is defined and regarded in most American jurisdictions, we may inquire as to the proper venue in a case involving embezzlement.

On the subject of the venue in embezzlement cases, we find declarations as to the general principles, which we regard as proper and reasonable, in Ruling Case Law: "As a general rule the accused must be tried in the county where the act of appropriation or conversion took place. That his purpose was effectuated in another county does not alter the rule where the instrumentalities were set in motion within the jurisdiction of the Court. Thus, the venue is properly laid in the county where the accused drew checks and did all other acts, although the depository bank which paid the checks was situated in another county. *So, if one is intrusted with property in one county, and there forms the intention of fraudulently appropriating it to his own use, and, pursuant to such intention, goes with it to another county, where he accomplishes his object by pawning it, his crime may be*

*deemed committed in the place where he received the prop-*
*erty and formed the criminal intent."* 9 R. C. L., 1293.
(Italics ours.)

To the same effect is this statement: "And it has been
held that an indictment will lie in the state where defend-
ant refused to account, and also in the state in which he re-
ceived the money, if there was evidence of an intent to de-
fraud at the time the money was received, or at any time
while defendant remained in that state." 16 C. J., 165.

The principles stated in Ruling Case Law and Corpus
Juris are in harmony with decisions of this Court and the
larceny case of Thurston, to which we have before ad-
verted.

Let us apply the stated principles to the facts of the
case at bar, as they were established in the evidence
adduced on the part of the prosecution. In Aiken
County, this State, the appellant received from the prosecu-
trix the check for the money. The check being good, and the
appellant having received the money thereon, the receipt
of the check was, in law, the receipt of the money. *State
v. Jackson,* 87 S. C., 407, 69 S. E., 883. The conditions
upon which the check was delivered to, and accepted by, the
appellant, were that he would pay from the proceeds thereof
certain debts, instructed to be paid by the prosecuting wit-
ness, which debts did not include the appellant's own grocery
bill. The appellant was to account to the prosecutrix for his
acts, presumably in Aiken County, where he received the
money. The grocery bill was paid in Augusta, Ga. The real
conversion, therefore, occurred in Georgia, and not in
Aiken County. If the venue of the crime depended upon
the *conversion alone,* the appellant committed no crime in
Aiken County when he paid the grocery account in Augusta.

But from the authorities cited above, the crime of breach
of trust with fraudulent intention does not depend alone
upon the act of conversion. "The instrumentalities" may
have been "set in motion within the jurisdiction of the

Court" of Aiken County. 9 R. C. L., *supra*. Having been "intrusted with property in" Aiken County, if the appellant, in that county, formed "the intention of fraudulently appropriating it to his own use, and, pursuant to such intention," went "with it to another county (or to Georgia) where he accomplished his object, * * * his crime may be deemed committed in the place where he received the property and formed the criminal intent." *Id.*

Applying the facts here again to the law, under the authority of *State v. Thurston, supra,* the conduct of the appellant, in Augusta, Ga., in appropriating the proceeds of the check, intrusted to him by the prosecuting witness, to his own use, by paying therefrom his own obligation, was some evidence from which the jury may have inferred that at the time the appellant received the check he had formed the intention and purpose to get possession of the check, and the cash proceeds thereof, with the object of misappropriating a sufficient amount of the money, for the payment of the grocery bill, to his own use, and to deprive the rightful owner of her interest and property therein.

Under the declared law, and the facts to which it is applicable, it seems clear to us, therefore, that there was sufficient proof on the issue as to the crime having occurred in Aiken County to carry the case to the jury on that issue, and the presiding Judge, as to that matter, did not commit error in refusing to direct a verdict of acquittal for the appellant.

What we have heretofore said has practically disposed of the issue made by the appellant that a verdict of acquittal should have been directed, because the State failed to offer any testimony showing "a breach of trust with a fraudulent intention and a fraudulent appropriation of the funds intrusted to" the appellant. The evidence showing that the appellant used some $200.00 of the money he received on the check for the payment of his own grocery bill was suf-

ficient to take the case to the jury on the question of his fraudulent intention. In addition, the testimony went to show that the appellant refused the demand of the prosecuting witness that he make good the amount used by him for the payment of the grocery bill, and that he would not permit her to see the receipted bill, which he claimed to have paid.

Over the objection of the appellant, there was introduced in evidence proof that the appellant carried a life insurance policy on the life of his son, Ernest, and that, as beneficiary, he collected the sum due thereon; and that the appellant's wife, the stepmother of Ernest, also carried a life insurance policy on the young man's life, and that she received, as beneficiary, the amount due on that policy. The appellant contends that this evidence was entirely irrelevant and incompetent, since the policies did not relate to, or have any connection with, the money claimed to have been intrusted to him, and the result was prejudicial to his defense.

In the direct examination of the appellant as a witness, the solicitor objected to several statements regarding the manner in which the appellant's family and the family of his son lived during the stay of the son and his family in the appellant's home, and many details as to the business matters connected with the families. Counsel for the appellant stated at the time that he wished to show the appellant's intentions, and he said: "I want to present the whole picture." A very liberal examination of the appellant was then permitted. This examination naturally called for a liberal cross examination. The appellant had claimed, on account of his son and his family living in his home, and his son's continued illness, that his grocery bills had been largely increased; that he had little money with which to discharge his obligations; and that in his transactions with his daughter-in-law he had acted in good faith. The fact that he used her money and not his money, all of which came

from insurance on the life of the son, was important in the determination of the appellant's claim of good intentions. The question as to his intention was an important issue in the case. His disposition of the proceeds of the insurance policy, payable to the wife, was the foundation of the charge against him. His disposition of the proceeds of the insurance policies, payable to himself and his wife on the life of that same son, tended to throw light on appellant's intentions, as to the manner in which he handled the money of his daughter-in-law. We think there was no error in the introduction of the evidence complained of.

The final matter relates to the charge to the jury. The appellant says the trial Judge failed to charge in regard to fraudulent intention, and that such failure entitles him to a new trial.

Proof beyond a reasonable doubt of a fraudulent intention is necessary before the crime of breach of trust is complete. That was expressly held in *State v. Butler, supra,* on which the appellant depends to sustain his exception as to the charge, and the conviction of the defendant in that case was reversed because the trial Judge there failed to so charge upon the specific request of the defendant.

In this case, the appellant did not make a request for the charge he now urges should have been given. In the absence of such request, and upon careful examination of the whole charge as given, we are unable to hold that there is reversible error, as contended for by the appellant. The presiding Judge, in the absence of the specific request, we think, sufficiently stated the law applicable to the crime charged against the appellant. He told the jury that the crime of breach of trust, charged against the appellant, included "the intent of cheating and defrauding the said Ruth McCann." He said also that the State "must prove his (the appellant's) guilt beyond a reasonable doubt." Again, he instructed the jury: "If this man intrusted with

the money willfully and feloniously appropriated a part of it to his own use, without her permission and without her authority, that is what is meant by breach of trust."

The judgment of this Court is that all the exceptions be overruled, and the judgment below be, and the same is hereby affirmed.

MESSRS. JUSTICES STABLER, CARTER and BONHAM and MR. ACTING ASSOCIATE JUSTICE COTHRAN concur.