KONDUROS, J.:
**561 In this criminal case, Dean Alton Holcomb appeals his convictions for breach of trust and obtaining money by false pretenses, arguing the trial court erred in (1) failing to direct a verdict of acquittal due to the State's failure to prove a written check constitutes a trust relationship; (2) failing to direct a verdict of acquittal due to the State's failure to prove Holcomb made a fraudulent misrepresentation; and (3) refusing to grant a mistrial based on remarks made by the prosecution. We affirm in part, reverse in part, and remand.
FACTS/PROCEDURAL HISTORY
Robert McGinn, Jr., lived in a house with his family in Greenville County for almost twenty years. A hail storm damaged the home around March or April of 2012. The damage to the house amounted to $7,180.99. McGinn's insurer, State Farm Insurance Company, initially paid $4,295.03. McGinn remained eligible for up to an additional $1,885.96 if the repairs necessitated it.
McGinn entered into a contract with Holcomb, the owner of Carolina Home Renovators, on May 25, 2012, to replace the roof of the house as well as make incidental repairs. McGinn selected a green roof from Green Tree Metals to replace the old one. The contract called for McGinn to initially pay Holcomb $4,295.03 to begin the repairs and $2,885.96 upon completion, for a total cost of $7,180.99. Four days after McGinn and Holcomb signed the contract, McGinn wrote Holcomb a check in the amount of $4,295.03. Two days later, the funds were withdrawn from McGinn's account.
Unbeknownst to McGinn, Holcomb had other clients, Susan Clark and Kenneth Clark (the Clarks), who also contracted with Holcomb to replace their roof. The Clarks suffered a significant delay in their roof being repaired, and it was only completed after constant reminders from Kenneth Clark. On the same day McGinn paid Holcomb, Holcomb finally ordered the roof for the Clarks' home. Holcomb replaced the Clarks' roof in late June 2012.
Holcomb never installed a new roof on McGinn's house. Holcomb completed some minor repairs, including staining the deck and sides of the house and painting the doors and windows. However, McGinn understood the substance of the **562 contract to be for the roof repair. One of Holcomb's employees, Jared Richardson, also understood McGinn hired Holcomb to install a new roof. Holcomb *370 never contacted McGinn to explain why he did not repair the roof.
A grand jury indicted Holcomb for obtaining property or money by false pretenses-greater than $2,000. He was subsequently indicted for breach of trust more than $2,000. At trial, Holcomb moved for directed verdicts on both charges, which the trial court denied. During closing arguments, Holcomb objected to two comments by the solicitor, and the trial court sustained both objections. Holcomb subsequently moved for a mistrial due to the remarks, and the trial court denied the motions. The jury convicted Holcomb of both counts, and the trial court sentenced him concurrently to five years' imprisonment for each count. This appeal followed.
STANDARD OF REVIEW
"In criminal cases, the appellate court sits to review errors of law only." State v. Baccus , 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). Thus, an appellate court "is bound by the trial court's factual findings unless they are clearly erroneous." Id.
LAW/ANALYSIS
I. Trust Relationship
Holcomb argues the trial court erred in refusing to grant a directed verdict for the breach of trust charge because a written check does not constitute a trust relationship. We disagree.
"When ruling on a motion for a directed verdict, the trial court is concerned with the existence or nonexistence of evidence, not its weight." State v. Weston , 367 S.C. 279, 292, 625 S.E.2d 641, 648 (2006). "A defendant is entitled to a directed verdict when the State fails to produce evidence of the offense charged." State v. Brandt , 393 S.C. 526, 542, 713 S.E.2d 591, 599 (2011). "When reviewing a denial of a directed verdict, an appellate court views the evidence and all reasonable inferences in the light most favorable to the State." Id.
"A person committing a breach of trust with a fraudulent intention or a person who hires or counsels another **563 person to commit a breach of trust with a fraudulent intention is guilty of larceny." S.C. Code Ann. § 16-13-230(A) (2015). "Larceny ... is defined as the felonious taking and carrying away of the goods of another against the owner's will or without his consent." State v. Mitchell , 382 S.C. 1, 5, 675 S.E.2d 435, 437 (2009).
"Breach of trust with fraudulent intention, by that especial designation, is ... peculiar to this jurisdiction." State v. McCann , 167 S.C. 393, 400, 166 S.E. 411, 413 (1932). "In other states, the crime, as known to us, is called by different names, such as 'larceny after trust,' 'larceny by a bailee,' 'larceny by false pretenses,' and very commonly as 'embezzlement.' " Id. "All the offenses are regarded as statutory, and one must look to the respective statutes to ascertain a definition of the crime." Id.
A careful reading of the language of [ section] 16-13-230 together with the South Carolina decisions reveals that that statute did not establish a new offense with an essential element of lawful possession. Section 16-13-230 merely expanded the definition of common law larceny by eliminating the element of trespassory taking or unlawful possession. Accordingly, after the enactment of the statute it became possible to convict a person of larceny without the necessity of proving unlawful possession. The statute merely eliminated an element, unlawful possession; it did not create a new element of lawful possession.
McPhatter v. Leeke , 442 F.Supp. 1252, 1254 (D.S.C. 1978).
"A trust is an 'arrangement whereby property is transferred with [the] intention that it be administered by trustee for another's benefit.' " State v. Jackson , 338 S.C. 565, 570, 527 S.E.2d 367, 370 (Ct. App. 2000) (quoting Black's Law Dictionary 1047 (6th ed. 1991)). "Thus, the transferor of the property must intend that the trustee will act for the transferor's benefit instead of on his own behalf." State v. Parris , 363 S.C. 477, 482, 611 S.E.2d 501, 503 (2005).
We find the trial court did not err in denying Holcomb's motion for directed verdict. Our supreme court in Parris looked at a factual situation comparable as the one in this case. In Parris , homebuyers received a *371 loan to purchase a mobile home. 363 S.C. at 480, 611 S.E.2d at 502. They gave the **564 loan checks to the mobile home seller, who then used the checks for his own benefit instead of paying the mobile home supplier on behalf of the homebuyers. Id. The supreme court held a trust relationship existed when the homebuyers intended the money from the checks be used for their benefit. Id. at 483-84, 611 S.E.2d at 504.
In this case, McGinn intended for the majority of his payment to go toward a new roof. The first check McGinn wrote, in the amount of $4,295.03, had "partial payment, roof" written on the memo line. McGinn testified the substance of the contract was for the roof to be replaced. McGinn expected Holcomb to use his payment to purchase a new roof and install it. McGinn never received a new roof. Accordingly, we find the State presented sufficient evidence taken in the light most favorable to the State for the trial court to deny a motion for directed verdict. See Brandt , 393 S.C. at 542, 713 S.E.2d at 599 ("When reviewing a denial of a directed verdict, an appellate court views the evidence and all reasonable inferences in the light most favorable to the State."). Therefore, we affirm the trial court's ruling on this issue.
II. Obtaining Money by False Pretenses
Holcomb argues the trial court erred in refusing to grant him a directed verdict for the obtaining money by false pretenses charge because the State failed to provide any statement proved to be false at the time it was made. We agree.
"When ruling on a motion for a directed verdict, the trial court is concerned with the existence or nonexistence of evidence, not its weight." Weston , 367 S.C. at 292, 625 S.E.2d at 648. "A defendant is entitled to a directed verdict when the State fails to produce evidence of the offense charged." Brandt , 393 S.C. at 542, 713 S.E.2d at 599. "When reviewing a denial of a directed verdict, an appellate court views the evidence and all reasonable inferences in the light most favorable to the State." Id.
"A person who by false pretense or representation obtains the signature of a person to a written instrument or obtains from another person any chattel, money, valuable security, or other property, real or personal, with intent to **565 cheat and defraud a person of that property is guilty [of obtaining a signature or property by false pretenses.]" S.C. Code Ann. § 16-13-240 (2015). "The supreme court has defined this offense as requiring a fraudulent representation of a past or existing fact by one who knows of its falsity, in order to induce the person to whom it is made to part with something valuable." State v. Dickinson , 339 S.C. 194, 198, 528 S.E.2d 675, 677 (Ct. App. 2000) (alteration in original). "A promise to do something in the future cannot constitute the basis of a prosecution for obtaining goods under false pretenses." State v. McCutcheon , 284 S.C. 524, 525, 327 S.E.2d 372, 372 (Ct. App. 1985).
The trial court erred in denying the motion for directed verdict for the charge of obtaining money by false pretenses. The cases interpreting this statute make clear that a future promise cannot constitute a false representation. Instead, the representation must be false either at the time or prior to it being made. In this case, the representation was that Holcomb would replace McGinn's roof. At the time the representation was made, Holcomb could have used McGinn's payment to replace his roof. Thus, we find the State did not provide sufficient evidence to show the statement was irrefutably false at the time made. Accordingly, the trial court erred in denying Holcomb's motion for a directed verdict on this charge. Therefore, we reverse the trial court's ruling on this issue.
III. Improper Remarks
Holcomb argues the trial court erred in failing to grant a mistrial based on improper remarks the solicitor made during closing argument. We agree.
The appropriateness of a solicitor's closing argument is a matter left to the trial court's sound discretion. State v. Copeland , 321 S.C. 318, 324, 468 S.E.2d 620, 624 (1996). An appellate court will not disturb a trial court's ruling regarding closing argument unless there is an abuse of that discretion.
*372 State v. Penland , 275 S.C. 537, 539, 273 S.E.2d 765, 766 (1981). "On appeal, an appellate court will review the alleged impropriety of the solicitor's argument in the context of the entire record, including whether the trial [court]'s instructions adequately cured the improper argument and whether there is **566 overwhelming evidence of the defendant's guilt." State v. Rudd , 355 S.C. 543, 550, 586 S.E.2d 153, 157 (Ct. App. 2003). The test of granting a new trial for alleged improper closing argument is whether the solicitor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright , 477 U.S. 168, 169, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). "An appellate court generally will decline to set aside a conviction due to insubstantial errors not affecting the result." State v. Black , 400 S.C. 10, 27, 732 S.E.2d 880, 890 (2012). "In applying the harmless error rule, the court must be able to declare the error had little, if any, likelihood of having changed the result of the trial and the court must be able to declare such belief beyond a reasonable doubt." State v. Watts , 321 S.C. 158, 165, 467 S.E.2d 272, 277 (Ct. App. 1996).
"A solicitor's closing argument must be carefully tailored so it does not appeal to the personal biases of the jurors." Rudd , 355 S.C. at 548, 586 S.E.2d at 156. "Further, the argument must not be calculated to arouse the jurors' passions or prejudices, and its content should stay within the record and reasonable inferences to it." Id. at 549, 586 S.E.2d at 156.
"Our supreme court has repeatedly condemned closing arguments that lessen the jury's sense of responsibility by referencing preliminary determinations of the facts." Id. Statements referring to a grand jury indictment "are improper because they inject an arbitrary factor into jury deliberations. The danger is that a juror might be persuaded to rely on the opinion of others instead of exercising his independent judgment as to the facts...." Id. (quoting State v. Thomas , 287 S.C. 411, 412-13, 339 S.E.2d 129 (1986) ).
During trial, in an in camera hearing, the solicitor proffered testimony that Holcomb talked negatively about McGinn's daughter on YouTube. Specifically, Holcomb called McGinn's daughter a "meth making mama." Holcomb objected to the solicitor's line of questioning, and the court sustained the objection. In his closing argument, the solicitor used the phrase "meth making mama" again in reference to McGinn's daughter. Holcomb objected, and the trial court sustained the objection. At the end of closing arguments, Holcomb moved **567 for a mistrial. Although the comment was improper, because McGinn's daughter was not involved in the case and none of the charges against Holcomb related to illegal substances, we find the solicitor's comment was not so unfair to Holcomb as to offend his due process. See Darden , 477 U.S. at 169, 106 S.Ct. 2464 ("An appellate court generally will decline to set aside a conviction due to insubstantial errors not affecting the result.").
However, the solicitor also stated during his closing argument "[t]his case was not brought on a warrant. This case was brought on an indictment that goes through a grand jury." Again, Holcomb objected, and the trial court sustained the objection. Holcomb moved for a mistrial on this basis. We find this statement by the solicitor extremely improper and prejudicial to Holcomb because it had the potential to influence the jury by referencing earlier determination made about the merits of the case. Moreover, we do not find the evidence of Holcomb's guilt so overwhelming as to render the solicitor's improper remark harmless. Therefore, we find the trial court erred in failing to grant a mistrial.[1] Accordingly, we reverse and remand for a new trial on the charge breach of trust.
*373 CONCLUSION
Based on the foregoing, the trial court did not err in failing to direct a verdict of acquittal on the breach of trust charge due to the State's failure to prove a written check constitutes a trust relationship. However, the trial court did err in failing to direct a verdict of acquittal on the obtaining money by false pretenses charge due to the State's failure to prove Holcomb made a fraudulent misrepresentation. Additionally, the trial court erred in refusing to grant a mistrial based on the **568 solicitor's reference to the grand jury during closing argument. Thus, the trial court is
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
HUFF and THOMAS, JJ., concur.

Holcomb also appeals remarks made by the solicitor regarding the solicitor's years of experience and defense counsel's inexperience. However, we find Holcomb's argument is not preserved for appellate review because it was not immediately objected to at trial. S.C. Dep't of Transp. v. First Carolina Corp. of S.C. , 372 S.C. 295, 301-02, 641 S.E.2d 903, 907 (2007) (holding to preserve a question for review, the objection must be timely made, and usually it must be made at the earliest possible opportunity); Webb v. CSX Transp., Inc. , 364 S.C. 639, 657, 615 S.E.2d 440, 450 (2005) (finding a contemporaneous objection is required to preserve issues for appellate review).