STATE v. EZZARD.

1. AN EXCEPTION shown by the record to be based upon an erroneous statement of an undisputed fact, overruled.
2. CHARGING JURIES.—There was no error on the part of the trial judge in stating to the jury in very general terms the several steps of the law in

its advance towards the crime of breach of trust with fraudulent intent, with which the defendant here was charged, where his honor followed up these observations with a correct definition of the crime involved.

3. AGENCY.—Where the uncontradicted testimony shows that defendant was employed under authorized agents of H. to procure a recovery of lands, and that defendant secured an offer for the purchase of these lands and falsely submitted it to H., the judge did not err in charging the jury that defendant was the trusted agent of H., to ascertain as to these lands and secure bids.

4. CHARGE ON FACTS.—The recital by the judge in his charge to the jury of the uncontradicted testimony in the case is not a constitutionally inhibited charge on the facts.

5. AGENCY—PROPERTY OF PRINCIPAL.—Where defendant was employed by agents of H. to ascertain as to the lands of H., and while in such employment received $2,500, to be taken to H. and offered for these lands, and defendant offered $800 as all that could be obtained for these lands, and H. received the $800 and executed deed to the person who had made the offer of $2,500, reciting a larger consideration at defendant's instance, all the money in excess of $800 retained by defendant was money in his hands as the agent of H., belonging to H.

6. IBID.—IBID.—If defendant, while acting for H. in a certain transaction, received out of that same transaction money which he knew belonged to H., it is immaterial that his accomplice, who handed him this money, testified that it was not given to defendant to be paid to H.

7. CRIMINAL BREACH OF TRUST.—Where an agent receives and retains money which he knows belongs to his principal, with a view to defraud his principal, it is breach of trust with fraudulent intent.

8. APPEAL RECORD—EXCEPTIONS.—Where the "Case" fails to show that requests to charge were refused, this court is not bound to consider exceptions alleging error in refusing to so charge; but they were considered in this case *ex gratia.*

9. AN EXCEPTION to the charge not sustained by the charge, overruled.

10. CRIMINAL BREACH OF TRUST—AGENT.—Larceny or breach of trust with fraudulent intent may be committed by an agent of his principal's money without such money having actually been in the principal's hands.

11. A CHARGE on an abstract proposition of law properly refused.

12. CRIMINAL BREACH OF TRUST—AGENT.—An agency may be created without deed, and where it exists and is recognized, the agent is liable for money or property of the principal received by him and converted to his own use with a felonious intent.

Before HUDSON, J., Barnwell, October, 1892.

Indictment against T. W. Ezzard for breach of trust with

fraudulent intent, in the conversion to his own use with fraud-
ulent intention at Barnwell C. H. of $100 of the money of
James W. Hill, William A. Hill, L. W. Hill, and Malvina Hill,
heirs at law of Lewis W. Hill, deceased. The defendants in-
troduced no evidence. The testimony for the plaintiff showed
that the heirs of Hill employed Bates & Simms, attorneys of
Barnwell, to recover for them some lands in Georgia, agreeing
to give them half for their fee. These attorneys employed
Glenn & Maddox, attorneys of Atlanta, agreeing to divide fees
with them. Glenn & Maddox employed T. W. Ezzard, a real
estate broker, agreeing to divide with him their share of the
fees. T. R. Perry, learning that Ezzard had the matter in
hand, went to Ezzard, and was authorized to assist. Perry
obtained from D. H. Pope, of Albany, Ga., an offer of $2,500,
who gave to Perry five drafts on New York for $500 each to be
paid for the land, if the Hills would take it, and to see that the
deed was properly executed by the legal owners of the land.
Perry so reported to Ezzard. Ezzard then went to Glenn &
Maddox and reported that on account of adverse claims to the
land and for other reasons, $800 was all that the land could be
sold for—that was the best offer that could be obtained. Glenn
& Maddox, so persuaded as to the value, sent Ezzard to Bates
& Simms.

Ezzard and Perry then went to Barnwell, S. C., and at Black-
ville Ezzard unfolded his purpose to Perry to buy the land for
$800, and pocket the balance between them, Perry to receive
$500. Perry assented. At Barnwell, Ezzard persuaded Bates
& Simms that $800 was all that could be got for the land. He
produced two of Mr. Pope's drafts, and said $200 of that
amount was for expenses and fees of Perry and himself allowed
by Mr. Pope. Thereupon the Hills were persuaded and agreed
to accept the $800 and execute the deed. One draft was cashed,
and $400 paid to the Hills and $100 to Perry, who gave it to
Ezzard. The other $500 was cashed, and Bates & Simms kept
$200 and turned over $300 to Ezzard, $200 of which was for
Glenn & Maddox. Perry took one of the other drafts for $500
to himself, and cashed the other two in Augusta, and paid the
money, $1,000, over to Ezzard. The consideration of the deed

was stated to be $5,000, on Ezzard's representation that Pope would stand a better chance before the juries if he was supposed to have given a good price for the land.

In some way a suspicion of the truth leaked out, and Glenn & Maddox forced Ezzard to give them his note and mortgage for $1,700 for the Hill heirs, but this debt was never paid. A short time before the trial Perry paid $500 back to the Hills.

Defendant's counsel requested the judge to charge as follows:

1. Three things must concur to make out the crime charged in the indictment: 1. A trust must have been reposed in relation to something of which the crime of larceny could be committed. 2. There must be a breach of that trust. 3. The breach of trust must have been committed with a fraudulent intent.

2. That the indictment charging that the sum of one hundred dollars was delivered by Perry to Ezzard, to be by him delivered to the Hills, and that the breach of trust consisted in his failure to deliver it to the Hills, but, on the contrary, he appropriated it to his own use; that if the jury find from the evidence that the one hundred dollars in question was not delivered to Ezzard, to be by him delivered to the Hills, that then and in that event the charge laid in the indictment is not sustained by the evidence, and defendant should be acquitted.

3. The statute under which the defendant is indicted did not create any new offence, but only extended the crime of larceny at common law to cases in which the property stolen was in the legal possession of the accused at the time of the conversion.

4. That before larceny can be committed of any property it must have come into the possession of the person from whom it is alleged to have been stolen.

5. That joint tenants, or tenants in common, have not an ownership as against each other upon which an indictment for larceny can be sustained.

6. That if the Hills never had any legal title to the money, the one hundred dollars in question, the crime charged in the indictment could not have been committed as of their goods, and they could not have any claim or right to the money until after they conveyed the land, of which it is claimed to be a

part of the purchase money; and since they received for the
land all that they contracted to take, they never acquired such a
title to the balance, of which the one hundred dollars in ques-
tion formed a part, as will support the charge laid in the indict-
ment, if the jury find from the evidence such are the facts.

7. That if the jury find from the evidence that the Hills
never authorized the defendant to sell the land, or otherwise
constituted him their agent to sell their land, then and in that
event the defendant did not commit a breach of trust with a
fraudulent intent, in failing to account to them for any portion
of the money for which the land was sold.

The "Case" does not say whether these requests were charged
or refused. So much of the charge as was excepted to, or as
bears upon the matters excepted to, was as follows:

The defendant, T. W. Ezzard, is charged here with breach
of trust with fraudulent intent. * * * It furthermore
has transpired in the testimony that an effort was made
by the attorney at law in Atlanta, Georgia, to get the present
defendant to make restitution, and he made an arrangement
with that view, but failed to come up to it; and it appears in
that testimony that if he had made restitution, in all proba-
bility he would not have been prosecuted, or, at all events, the
attorneys there would have used their influence to have pre-
vented it; but he saw fit, after taking advice of counsel, to
stand his ground; hence the prosecution was instituted and
the requisition was taken out, and he was brought over for
trial. * * *

Well, gentlemen, he is charged with breach of trust with
fraudulent intent. Our statute says, in section 2493, "Any
person committing a breach of trust with a fraudulent intention
shall be held guilty of larceny, and so shall any person who
shall hire or counsel any other person to commit a breach of
trust with a fraudulent intention." Section 2499 provides that
"Any person who shall by any false pretense or representation
obtain the signature of any person to any written instrument,
or shall obtain from another person any chattel, money, valua-
ble security, or other property, real or personal, with intent to
cheat and defraud any person of the same, shall be guilty of a

misdemeanor, and shall, on conviction, be sentenced to pay a fine not exceeding $500.''

These two sections are outside of the definition of larceny, simple, and larceny is defined to be the felonious taking and carrying away of goods and chattels of another with intent to steal. But the experience of mankind soon taught us that the same thing might be accomplished in a great many ways, by practically cheating and by defrauding where the party would get lawful possession of the goods, and that if you were to take a technical definition of larceny, the felonious taking and carrying away, a large amount of fraudulent stealing could be done without a possibility of convicting, because there would be no felonious taking. And consequently our ancestors had to meet this emergency by statutes to cover all kinds of cheating and defrauding done to get possession of the property of another; hence breach of trust with fraudulent intent is larceny. Counseling and advising another is breach of trust. Obtaining goods under false pretense is, and so likewise he who sells property under a lien without permission of the holder of the lien, and who withholds property under levy. The statutes have multiplied so as to cover all species of dishonesty in dealing with our fellow-men. * * *

The heirs of Lewis Hill, owning certain land in the State of Georgia, desired to get possession of the lands, or rather convert the lands into money. Well, with that view, they saw fit, and had, to employ agents to set in motion certain agencies, in order to get the facts in regard to their territory and to effect the sale. They empowered no one to sell—that is, to convey. There was no power of attorney; it is not pretended that there was. They employed counsel here. The legal counsel here could not spare the time and expense of going to Georgia and looking up all these lands and titles thereto. They corresponded with and secured the services of this firm of gentlemen in Atlanta, and that firm, as one of them has stated to you, could not spare the time away from their office to travel in different portions of Georgia to look up the lands and to negotiate sales, and they called upon the defendant here, who, it is said by this witness, was probably more universally acquainted with the

lands in all parts of the State of Georgia than any one man he could pick up. He was engaged for his knowledge in that respect; he was selected, therefore, as the trusted agent to search out and ascertain the facts in regard to these lands and secure bids.

He in turn spoke to others—a Mr. Norman in one county, and through Mr. Norman this Mr. Perry was spoken to; Perry goes to work and makes a contract after negotiations with Mr. Pope, who concluded that he would pay a certain price for this land—$2,500, and the $2,500, in the shape of five checks, were entrusted Mr. Perry by Mr. Pope. Perry engaged with Mr. Ezzard to come and meet him in Augusta. The two men met in Augusta and came on to Blackville, spent a short time there; they conferred together and conspired to cheat these people out of their money. Now that is the testimony of Perry—that is the sum and substance of it.

He had $2,500 to pay for this land if the Hills would accept it. They concocted a plan by which they would get the land from the Hills for less—for $800, if they could—and pocket the balance and make a division of it. They came over, and so managed their plans, Ezzard and Perry, and fooled the other parties by their false statements and false representations; they induced, first, the attorneys, the legal attorneys, to believe that $800 was the highest bid, who also impressed that upon the Hills; and although it was a matter of surprise, a matter of regret, yet, confiding in those representations, the Hills made them the titles as Perry drew it, and received their little pittance of the money, to wit: $400, according to the arrangement they made with the attorneys here. This is part of the representation of the facts as described, a recital of the substance; the facts are for you—I don't undertake to tell you any facts are proven at all.

The testimony of the State is that. You have heard, however, the testimony of Mr. Maddox as to what occurred in Atlanta after the accomplishment of this swindle; that Mr. Ezzard gave his note for $2,500; the testimony of Mr. Perry as to the division of the spoils betwixt them. After the $200 had been carried to the firm of Glenn & Maddox and $100 to

Ezzard, Perry says he got $500, and the balance, $1,000, I believe, it was Ezzard got. Now, those are the facts.

Now, the question is, was any transaction here in South Carolina subject to our law, was there any breach of trust committed by Ezzard? I instruct you that any part of that money which he got here in South Carolina, delivered into his hands for the purpose of delivering to the Hills, it was a breach of trust for him not to deliver it to the Hills, if they accepted the proposition of Pope. It was money that belonged to the Hills, and he and Perry were both the agents of the Hills, not appointed in writing, not appointed directly by the Hills, but they took upon themselves the office of agents of the Hills through the solicitation of other persons; and when Mr. Pope delivered that money into the hands of Perry, he gave him the money as the agent of the Hills as well as himself. First, he owed a duty to Pope, and that duty was to carry that money faithfully and deliver it to the Hills; deliver it to the Hills, if they would accept it. If they would accept that bid, he was as much the agent of the Hills as he was of Pope. He was not employed by Pope, except to take that offer; and when the money came into his hands, he should have made faithful delivery. So he was the trusted agent of both parties.

Now, when Ezzard joined Perry in Augusta, and came with him here to Blackville, and from Blackville to Barnwell, the very time that that money passed into his hands, passed into the hands of Ezzard, it passed into his hands as agent of the Hills. He took upon himself that trust. He was in duty bound to act in good faith as an honest man to deliver that money to whom that money belonged, to wit, the Hills; and if you believe from the evidence that that money went into his hands here and he appropriated it to his own use, and he ought to have given it to the Hills, when he knew he ought to have given it to the Hills, he committed a breach of trust, and committed it with the deliberate intent to defraud the Hills. And the question is whether the entire appropriation was not made here in South Carolina, although there might have been a subsequent division in Georgia. I say, it is a question whether the entire appropriation might not have been made here in South

Carolina, although the division was made in Georgia.    But that
is not the question before you ; the question for you is, that one
hundred dollars which Ezzard appropriated here with a view to
take up that check here.    And Perry had no right to give to that
money any other direction than the sacred trust with which it
was given to him, and that sacred trust Ezzard knew, and they
were united together to defraud those people of their money,
and accomplished it to a large extent—fifteen or seventeen
hundred dollars ; and that is the view I take of the law of
breach of trust with fraudulent intent.    And·I instruct you
that if you are satisfied from the testimony that that one hun-
dred dollars went into Ezzard's hands here, and it ought to
have gone to the Hills, when he knew it ought to have gone to
the Hills, that was a breach of trust, and he did it with a view
to defraud them here in Barnwell County.    Now, the facts are
for you.

·The defendant was found guilty, and sentenced to fifteen
months at hard labor, and he appealed, alleging error in the
foregoing charge and refusals to charge, although the case does
not state that the requests were refused.

*Messrs. Robert Aldrich* and *W. P. Price,* for appellant.

*Mr. Bellinger,* solicitor, contra.

February 13, 1894.    The opinion of the court was delivered by

MR. JUSTICE POPE.    The appellant was convicted of the
crime of breach of trust with fraudulent intent, in the Court
of General Sessions for Barnwell County, in this State, at the
November term, 1892, of such court, and after having been
duly sentenced, appealed to this court, on nineteen grounds.
These grounds may be thus classified: First. Errors in the
charge of the Circuit Judge to the jury.    Second. Errors in
the refusal of the Circuit Judge to charge certain requests to
charge, made by defendant.    The first class contains the first
to the twelfth exceptions, inclusive.    The second class con-
tains the thirteenth to the nineteenth exceptions, inclusive.

In effect, the first exception imputes error to the Circuit

Judge in stating to the jury that the defendant saw fit, after taking advice of counsel, to stand his ground, when there was nothing in the evidence to warrant such a statement.

In this conclusion the appellant is not supported, for in the testimony of the witness, C. D. Maddox, this appears: "He (Ezzard) told me he had been counselling with some lawyers, and began fixing up some defence." This statement of the witness had been preceded by an explanation as to defendant, Ezzard, having executed a note, secured by a mortgage of land, for the $1,700 in question between Ezzard and the Hill heirs. The exception is overruled.

Appellant next assails the charge of the judge when he stated that one might be guilty of breach of trust by counselling and advising another. By reference to the charge of the judge, it will be seen that he indulged in some general observations tending to the information of the jury of the different advances in the law looking to the repression of violation of trusts. The expression complained of by the appellant is one of such expressions as is made manifest by reproducing this part of the judge's charge: "Counselling and advising another is breach of trust. Obtaining goods under false pretences is, and so, likewise, he who sells property under a lien without the permission of the holder of the lien, and who withholds property under levy. The statutes have multiplied so as to cover all species of dishonesty in dealing with our fellow-men." While, in some instances, these expressions are not full enough to answer as definitions, still they have no direct bearing upon the offence with which the defendant is charged. They were not so intended by the judge. It will be observed that when the Circuit Judge undertakes to define the offence of breach of trust with fraudulent intention, he is much more careful and explicit. This exception, therefore, is not well taken.

The next point raised in this group of exceptions is that set up in appellant's third exception, embracing three-quarters of a printed page of the judge's charge, wherein is set forth a narrative of the matters testified to by the witnesses which were uncontradicted in this case. The appellant

21—40

suggests, in this connection, that by this course on the part of
the judge, the question of the employing of any one by the
Hill heirs to sell their lands situated in the State of Georgia
was practically settled by him in the absence of any testimony
to support such employment. The testimony clearly shows
that, in the absence of any express authority, such as a power
of attorney from the Hill heirs, or a written direction signed
by them, the defendant, Ezzard, as the agent of the Hill heirs,
did not only attempt to sell their lands by making a bargain
therefor, subject, of course, to their ratification of such bar-
gain, but that, by his fraudulent representations, the Hill heirs
did actually sign a deed of conveyance carrying into effect
this bargain so made by Ezzard, as their agent, with a Mr.
Pope, of Albany, in the State of Georgia. There was no de-
nial of these facts. Under such circumstances, we can see no
error on the part of the judge in this particular.

In the fourth, fifth, sixth, and ninth exceptions, it is sug-
gested that the judge charged upon the facts in the particulars
therein enumerated. Let it be remembered that in this
case the defendant offered no evidence. It was all
offered by the State. No contradiction was attempted.
Much of it related to the admissions of the defendant to several
persons before his trial, and which were not denied by him.
Under such circumstances, the recital by the Circuit Judge in
his charge to the jury of such uncontradicted testimony was
not obnoxious to that provision of our Constitution forbidding
a judge from charging upon the facts. We do not know that
we can any more clearly express our meaning in relation to
this matter than by quoting the language in the judgment of
this court as it is set out in the case of *Moore* v. *Columbia &c.
R. R. Co.,* 38 S. C., 31: "What is meant by the judge charg-
ing upon the facts? It seems to us it may be said to occur
when, in the progress of a trial, the Circuit Judge conveys by
word his opinion of the sufficiency or insufficiency of certain
testimony necessary to the determination by the jury of some
fact at issue between the parties litigant. * * * This court,
in construing this section of the Constitution, has held that
any expression of the Circuit Judge in his charge that did not

relate to the issues being tried by the jury, that were not pertinent to such issues, did not fall within the interdicted action on the part of the judge. *State* v. *Sims*, 16 S. C., 495; *State* v. *Corbin, Ibid.*, 545. * * * But great emphasis is laid to the manner employed by the judge in stating the testimony. This court has decided that while he may not charge upon the facts, yet he may state the testimony in its logical order and as bearing upon certain issues. In *Benedict* v. *Rose*, 16 S. C., 630, it was said: 'Accordingly the Constitution declares that he has the right to state the testimony and declare the law. What is the proper scope and extent of this power? It has been properly held that stating the testimony means more than repeating it. It includes the idea of stating it in its logical relations to the propositions it is to support, or contradict, as well as to the principles of law by which its bearing and force ought to be controlled, or, as it is expressed by the technical phrase, summing up.' " All difficulty in overruling these objections vanishes when they are carefully considered in the light of these decisions.

The seventh exception imputes error to the Circuit Judge for having charged that if the defendant, as the agent of the Hill heirs, received any money belonging to his principals, it was a breach of trust in the defendant to retain such money, on the ground that there was no evidence adduced at the trial to support such a proposition. We take a different view of the testimony relating to this branch of the case from that entertained by the learned counsel of the appellant. No doubt his error arises from the standpoint he occupies; for it is evident he views his client's relation to the Hill heirs to be circumscribed by the $800 for which they were actually selling their lands in question, while their minds were being controlled by the false representations of the defendant. Whereas the true position is this: This agent had induced Judge Pope, of Albany, Georgia, to send an offer of $2,500 for said lands, which said sum of $2,500 actually accompanied said offer, and was in the power and control of said defendant, as the agent of the Hill heirs, at the very moment said Hill heirs, ignorant of these last facts, accepted a part thereof

($800) as the whole of Judge Pope's offer, and the deed signed by the Hill heirs to Judge Pope for their lands covered in amount, as the consideration therefor, not only $2,500, but really $5,000. Thus it is apparent that the purchaser, Pope, had in the hands of Ezzard, as the agent of the heirs of Hill, the sum of $2,500 of cash, or its equivalent, which became the property of the heirs of Hill the moment they made a deed for the lands in question at or over the sum of $2,500. There was an abundance of testimony in support of all these facts to avoid the claim of the appellant that such was not the case. Let this exception be overruled. The eighth exception imputes error in the charge of the judge as to the money in the hands of Ezzard and his accomplice, as the agents of the heirs of Hill. The statement we have made in the consideration of the seventh exception, taken in connection with the other evidence in this case, justified the Circuit Judge in charging this legal proposition, if the jury found the facts sworn to by every witness, and denied or contradicted by no one, to be true. If the facts sworn to were true, the Circuit Judge was right; every dollar of the $2,500 was the property of the heirs of Hill, and the attorneys would have had an equity against these proceeds of sale. This exception must be overruled. The tenth exception must be overruled because of our views already expressed in treating of seventh and eighth exceptions.

The eleventh exception relates to the unfolding of the law by the Circuit Judge, that the accomplice of Ezzard and Ezzard himself, both being agents of the heirs of Hill, and as such holding funds that became the property of their principals, the heirs of Hill, the moment they signed the deed for the land in question to Judge Pope, of Albany, Georgia, at a consideration in said deed equal to or beyond $2,500, could not give a direction to said funds by which its legal ownership could be changed, certainly as long as it remained in the hands or control of Ezzard as the agent of the heirs of Hill. It made no possible difference that the accomplice of Ezzard, while on the stand as a witness, stated that he paid no $100 to Ezzard for him, Ezzard, to pay to the Hill heirs. If the-money belonged to the heirs of Hill, which fact

was known to Ezzard, and he received it while the agent of such heirs, and converted such money to his own use, with a purpose to defraud and deprive such heirs of Hill of their money, it was a breach of trust with a fraudulent intent. This was no error.

The twelfth exception relates to the judge's charge as to the law, provided the jury found a certain state of facts. We think the Circuit Judge committed no error here. In his charge, as before remarked, he had indicated to the jury what the law included in the charge of a breach of trust with a fraudulent intent. This language here complained of does not militate against such definition.

Second. By the Case as agreed upon by both appellant and respondent, it no where appears that the Circuit Judge refused to charge any of the requests of the defendant-appellant. We are bound by the Case, and if it fails to show any matter, we cannot allow counsel in their argument to bring it to our attention for the first time. It is a dangerous practice. But we will waive this matter. The fourteenth exception relates to an alleged refusal by the Circuit Judge to charge defendant's request. The Circuit Judge was right in not charging this request in the form it was presented.

The $100 paid by the accomplice to Hill as the agent of the heirs of Hill may not have been paid to said Ezzard to be delivered to the Hills, yet if it came into the hands of Ezzard with a full knowledge that it was the property of his principals, the heirs of Hill, and he deliberately converted said sum of money to his own use with a fraudulent intent, he would still be guilty. We know the indictment charged that Ezzard committed this breach of trust, which consisted in not delivering the sum of $100 which had been delivered to Ezzard to be delivered to the heirs of Hill. The crime to exist, even under this indictment, did not need that the accomplice of Ezzard had any purpose or gave any direction that Ezzard would deliver this $100 so delivered to him to be by him delivered to the heirs of Hill. The duty of delivery of that money existed independent of any will or intent in the accomplice of Ezzard when he turned it over to Ezzard.

The fifteenth exception is not sustained by the charge of the judge; for he did explain that the old crime of larceny had become too narrow to catch some of these latter day bad men, and that the legislature had in its wisdom extended the boundaries of larceny at the common law.

The sixteenth exception complains that the Circuit Judge did not hold that before a larceny can be committed of any property it must have come into the possession of the person from whom it is alleged to be stolen. We are very glad the Circuit Judge did not charge this proposition, without ample qualification. What will amount to the owner's possession when he has agents employed to gather in his money or other property? Surely it will not be contended that the owner must first lay his hands on such property, and then from his hands turn it over to the agent, so that thereafter, if he steals such property, he may be found guilty of breach of trust with a fraudulent intent. Would not such agent be just as guilty if he received as the agent of the owner the personal property and committed a theft of it before it actually ever touched the principal's hands? Or, in other words, is not the possession of the agent the possession of the principal? If the last be correct law, the Circuit Judge would have been charging an abstract or speculative question of law if he had followed appellant's suggestion as to this request.

Appellant asked the judge to charge that joint tenants, or tenants in common, have not an ownership as against each other upon which an indictment for larceny would be sustained. The judge very properly refused to charge an abstract proposition of law. No doubt the learned judge realized that it was good law. Unfortunately for appellant, there was no testimony to this effect in the case, and the law implied no such relation. Let the exception be overruled.

Appellant, by his eighteenth exception, imputes error to the Circuit Judge because of his failure to charge, as requested, "that if the Hills never had any legal title to the money, the $100 in question, the crime charged in the indictment could not have been committed as of their goods, and that they could not have any claim or right to the money

until after they conveyed the land of which it is claimed to be a part of the purchase money; and since they received for the land all that they contracted to take, they never acquired such a title to the balance, of which the $100 in question formed a part, as will support the charge laid in the indictment, if the jury find from the evidence that such are the facts.'' The Circuit Judge very properly refused to charge this request. The facts testified to do not support such a proposition. As before remarked, Judge Pope, of Albany, Georgia, agreed to pay, and did pay, the sum of $2,500 for this land. The deed executed by the heirs of Hill was for $5,000 as a consideration. In no case did the heirs of Hill recite in their deed $800 as their consideration therefor to Judge Pope. This $2,500 was actually received of Judge Pope by Ezzard and his accomplice, as the agents of the Hill heirs, and the $100 in question was a part of such $2,500, every dollar of which belonged to the Hill heirs.

The nineteenth exception alleges error in the trial judge in refusing to charge "that if the jury find from the evidence that the Hills never authorized the defendant to sell their land, then and in that event the defendant did not commit a breach of trust with a fraudulent intent in failing to account to them for any portion of the money for which the land was sold.'' This request was too narrow to fit the facts in testimony. Ezzard could get into possession of the money of the Hill heirs without any formal power of attorney. An agency can be created in other ways than that created by deed. If an agency actually exists, if such a relation as principal and agent is recognized and acted upon by both principal and agent, in the absence of any writing between the parties, the consequences are just as fixed in the one case as in the other. And he who as agent of his principal receives the property of such principal and, if personal property, converts it to his (the agent's) use, against the consent of the principal, and with a felonious intent, is just as guilty as if the relation of principal and agent arose under a deed.

It follows, therefore, that the exceptions must be overruled. It is the judgment of this court that the judgment of the Circuit Court be affirmed.