15685

## STATE v. OWINGS
(31 S. E. (2d), 906)

*Mr. L. E. Wood,* of Greer, S. C., and *Mr. J. G. Leatherwood,* of Greenville, S. C., Counsel for Appellant,

*Mr. W. A. Bull,* Solicitor, of Greenville, S. C., appeared as Counsel for the State, Respondent.

November 3, 1944.

MR. CHIEF JUSTICE BAKER delivered the Opinion of the Court; while MR. ASSOCIATE JUSTICE OXNER files an Opinion Concurring in the Result, with MR. ASSOCIATE JUSTICE STUKES concurring. The Opinion of the Court follows:

The appellant was tried and convicted in the Court of General Sessions for Greenville County of the offense of breach of trust with a fraudulent intention. The indictment was in the usual form.

The appellant was an agent of Carolina Life Insurance Company, and as such agent he collected premiums on policies of insurance issued by said Company, both ordinary and industrial, for which he failed to remit to the insurance company, his shortage aggregating a sum in excess of $500-.00, all of which is admitted by the appellant.

Notwithstanding the admission by the appellant of the substantive facts above related, he undertook to testify that in appropriating the premiums collected to his own use, it was not with a fraudulent intent—that he did not intend to defraud either the insurance company or the policy holders. It is to this issue that appellant's exceptions in the main are directed by reason of the trial Judge's rulings and remarks in making his rulings.

There is a full discussion of our "breach of trust" statute in *State v. McCann,* 167 S. C., 393, 166 S. E., 411, 412, and in which case Mr. Chief Justice Blease, writing the opinion of the Court, quoted with approval from the opinion in *State v. Shirer,* 20 S. C., 392, the following: " 'The statute does not describe or define the offense. * * * As we understand it, we have no law creating the special offense known as embezzlement, and the object of our act was simply to enlarge the field of larceny, removing what before might have been a defense for those who received property in trust and afterwards fraudulently appropriated it.' " (An embezzlement statute was enacted in 1898, but relates to public funds only). The *McCann case* definitely holds that "proof beyond a reasonable doubt of a fraudulent intention is necessary before the crime of breach of trust is complete."

Breach of trust is larceny after trust, which includes all of the elements of larceny or in common parlance, stealing, except the unlawful taking in the beginning. As was stated in *State v. McCann, supra,* "* * * breach of trust with fraudulent intention, in this state, is nothing more or less than larceny. It might well be termed 'statutory larceny,' as distinguished from larceny at common law. The main distinction between the two crimes is this: In common-law larceny, possession of the property stolen is obtained unlawfully, while in breach of trust, the possession is obtained lawfully. * * * "

Apparently a portion of the testimony is set out in the record in narrative form, and other portions verbatim, but on the whole is understandable. The appellant, after narrating the amount of his weekly collections, and referring to a stamp system of bookkeeping to which he objected, and that he found that his account was out of balance. stated: "After deductions for victory tax, social security, my payments to the company (appellant was paying by the week a

loan which had been made to him by the insurance company), and so on, I have had as little as $2.75 a week left in my ticket."

"By the Solicitor: I don't see that that has anything to do with it.'

"The Court: I sustain the objection. If he came out in debt he had no right to steal money—it is the same thing as stealing. As I understand it he did not claim the money was his, the money he is charged with taking from the company and his financial condition has nothing to do with it.

"By Mr. Wood: We admit, your Honor, the money was used.

"The Court: Is he going to claim he used it because he didn't have enough to live on?

"By Mr. Wood: That is right, your Honor.

"The Court: I rule he can't go into that. A man, because he has no money to live on, can't go out and take other people's money."

The trial Judge was unfortunate in his choice of words in making his ruling. The issue being tried by the jury was whether the appellant had used the money of the insurance company with a fraudulent intention —whether he was guilty of stealing the money which had been intrusted to him, and yet the trial Judge denominated the appellant's conduct as stealing.

Near the close of appellant's testimony in chief, he stated: "When I used this money I had no intention of defrauding anybody, the insurance company or the policyholders or anybody. I am honest with you, I didn't." When he made this statement, the trial Judge admonished him in these words: "Just answer his questions; they (obviously referring to appellant's attorneys) will argue the case to the jury for you."

The appellant had the right to deny his intention of defrauding any one, it mattered not how weak such a denial of fraudulent intention may have sounded to the jury in the face of the admitted facts. It was therefore improper and prejudicial, legally speaking, for the trial Judge to refer to appellant's denial in such a manner as to destroy any possible probative value the denial may have had.

We deem it unnecessary to refer to the other instances in the record where it is claimed that the trial Judge "took a hand at the bellows."

The testimony of the appellant himself required that the jury pass upon his innocence or guilt of the crime charged in the indictment. If he must be convicted on the testimony he still had the right to have the verdict of guilty come from the jury, untrammeled by any opinion that the Circuit Judge or this Court might hold as to his guilt.

Reversed and remanded for a new trial.

Messrs. Associate Justices Fishburne and Taylor concur in the result.

Mr. Associate Justice Oxner (concurring).

The fact that one is in destitute circumstances, or that his income is insufficient to support himself and family, would not constitute a legal excuse for embezzling the funds of another. Testimony to that effect offered by a defendant, when charged with a breach of trust with fraudulent intention, would be irrelevant. This is the impression which I think the trial Judge intended to convey in making the ruling complained of. But I think the expression which he used is also open to the construction placed on it in the leading opinion and the jury may have so construed it. Under these circumstances, we cannot say the defendant was not prejudiced thereby.

Of course, the language used by the trial Judge resulted from inadvertence and he did not intend to convey the im-

pression which the jury may have received. When we consider the arduous duties of a trial Judge, the number of rulings he is required to make during a heavy term of Court with little or no time for reflection, the many circumstances which tax his patience to the limit, and the many other difficulties which confront him, it is easily understood how at times he may be unfortunate in his choice of words in ruling on the admissibility of testimony. This was well pointed out by this Court in the case of *Sumter Trust Co. et al. v. Holman,* 134 S. C., 412, 132 S. E., 811.

Referring to the second incident mentioned in the leading opinion, I seriously doubt whether the statement made by the trial Judge to the appellant constitutes prejudicial error. Appellant had previously testified without objection, as follows: "The money that I was short, I don't know how it came about. I didn't mean to steal any money from anybody. I didn't mean to take a cent from anybody. I don't know how this shortage came about." It appears, therefore, that when the incident complained of occurred, appellant was largely repeating testimony already given and this may have caused the trial Judge to give the admonition referred to, although it would have been better if he had expressed it differently.

For the foregoing reasons, I concur in the result of the opinion of Mr. Chief Justice Baker.

MR. ASSOCIATE JUSTICE STUKES concurs.