497 S.E.2d 735

**The STATE, Respondent,**

v.

**William SCOTT, Appellant.**

**No. 2791.**

Court of Appeals of South Carolina.

Heard Dec. 3, 1997.

Decided Feb. 17, 1998.

126

Chief Attorney Daniel T. Stacey, of South Carolina Office of Appellate Defense, Columbia, for appellant.

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Charles H. Richardson; and Solicitor W. Barney Giese, Columbia, for respondent.

HOWELL, Chief Judge:

William Scott appeals from his conviction for breach of trust with fraudulent intent. We affirm.

## I.

Scott was the manager of a Fast Fare convenience store located on Hunt Club Road in Richland County. Pursuant to the policies established by Crown Central Petroleum, owner of the Fast Fare chain, Fast Fare stores were expected to make a bank deposit at least once each weekday. Typically, the deposits consisted of the cash and checks received the day before, although a mid-day deposit of a portion of that day's receipts was sometimes made. Each store called the Crown offices every day to provide information from the store's Daily Report. The Daily Report tracked, among other things, the amount of the daily deposits. Crown verified the amount of the deposits by requiring the store to have the deposit slip verified by the bank at the time of the deposit and keep the validated deposit slips at the store. Generally, the store manager was responsible for making the deposits, compiling the information for the Daily Report, and making the daily call to Crown offices, although these activities could also be performed by an assistant manager. Only a store manager or assistant manager could open the store's safe, and non-managerial employees never had access to bank bags.

At 7:30 p.m. on May 7, 1991, Michael Billie, a Crown Territory Manager, went to the Hunt Club Road store for a routine paperwork check. Billie found that two deposits had been made late and that there were no bank-validated deposit slips for several other deposits that should have been made earlier that week. When Billie asked Scott why there were not enough deposit tickets for the deposits listed in the Daily Reports, Scott explained that he had been working late and made several night deposits, and that he had not yet received the validated deposit slips from the bank. Billie instructed Scott to go to the bank the next day to get the missing deposit slips. Billie then left the store, planning to return the next morning.

On the morning of May 8, however, before Billie returned to the Hunt Club Road store, he received a call from David Watson, a Crown auditor who had made a routine, unannounced visit to the store and discovered that there were missing deposit slips. Billie then went to the bank himself to retrieve the deposit slips for the night deposits Scott claimed

to have made. There were, however, no deposit slips waiting at the bank, and a bank-generated report showed that no deposits had been made on the dates in question.

When Billie returned to the Hunt Club Road store, Watson told Billie that Scott had left an hour earlier to go to the bank. Scott never returned to the store, and Billie was unable to locate him at his apartment or by phone.

After an investigation of the Hunt Club Road store, Crown determined that, of the deposits reported in the Daily Reports from the week of May 1–7, 1991, four deposits—one from May 4, two from May 5, and one from May 7—were never made. In addition, Crown determined that several deposits were late, in violation of company policy.[1]

Scott was charged with breach of trust with fraudulent intent based on the disappearance of the May 4, 5, and 7 deposits. Scott turned himself in to the police on May 17, 1991.

## II.

On appeal, Scott challenges the trial court's denial of his motion for a directed verdict. According to Scott, he was convicted simply because he was the store manager and, therefore, ultimately responsible, in the corporate sense, for the missing deposits. Scott argues that the State failed to prove he worked on the days of the missing deposits and failed to prove there was no assistant manager who could have been responsible for the missing deposits. Accordingly, Scott contends the State failed to present substantial evidence of his guilt. We disagree.

■ Preliminarily, we note that there is some confusion in South Carolina's case law regarding the standard of review to be applied when reviewing the denial of a directed verdict motion in criminal cases. It is clear that the evidence must be viewed in the light most favorable to the State, and that we must be concerned with the existence of the evidence and not its weight. *See, e.g., State v. Huggins,* 325 S.C. 103, 481

---

1. Crown considered a deposit to be late if the deposit was not made and validated by the bank on the day the deposit slip was filled out and dated by the store manager.

S.E.2d 114 (1997); *State v. Morgan,* 282 S.C. 409, 319 S.E.2d 335 (1984). The confusion, however, comes in determining the quantum of evidence, when viewed in the light most favorable to the State, that is required to send a case to the jury.

Some cases state that "if there is *any direct* evidence or *any substantial circumstantial* evidence reasonably tending to prove the guilt of the accused, an appellate court must find that the case was properly submitted to the jury." *State v. Rowell,* 326 S.C. 313, 315, 487 S.E.2d 185, 186 (emphasis added), *cert. denied,* —— U.S. ——, 118 S.Ct. 319, 139 L.Ed.2d 246 (1997); *accord Huggins,* 325 S.C. at 110, 481 S.E.2d at 118; *State v. Horne,* 324 S.C. 372, 478 S.E.2d 289 (Ct.App. 1996), *cert. denied* (July 24, 1997). Other cases state that a criminal case "should be submitted to the jury if there is *any substantial evidence,* either direct or circumstantial, which tends to prove the guilt of the accused or from which his guilt may be fairly and logically deduced." *Brown v. State,* 307 S.C. 465, 468, 415 S.E.2d 811, 812 (1992) (emphasis added); *accord State v. James,* 321 S.C. 75, 472 S.E.2d 38 (Ct.App. 1996), *cert. denied* (December 19, 1996). Still other cases state that a jury issue is created by the presentation of "*any direct or circumstantial* evidence reasonably tending to prove the defendant's guilt." *State v. Crane,* 296 S.C. 336, 341, 372 S.E.2d 587, 590 (1988) (emphasis added); *accord State v. Dennis,* 321 S.C. 413, 468 S.E.2d 674 (Ct.App.1996). We need not attempt to resolve this conflict, however, because we conclude that the evidence in this case is sufficient to withstand Scott's directed verdict motion under any of the characterizations of the standard of review.[2]

---

**2.** In *State v. Grippon,* 327 S.C. 79, 489 S.E.2d 462 (1997), our Supreme Court concluded that if a proper reasonable doubt instruction is given, a jury need not be instructed that the circumstantial evidence must be so strong as to exclude every reasonable hypothesis other than guilt, a charge previously required. *See, e.g., State v. Edwards,* 298 S.C. 272, 379 S.E.2d 888, *cert. denied,* 493 U.S. 895, 110 S.Ct. 246, 107 L.Ed.2d 196 (1989); *State v. Littlejohn,* 228 S.C. 324, 89 S.E.2d 924 (1955). The *Grippon* Court recommended the use of a jury instruction stating that the "law makes absolutely no distinction between the weight or value to be given to either direct or circumstantial evidence. Nor is a greater degree of certainty required of circumstantial evidence than of direct evidence." *Grippon,* 327 S.C. at 84, 489 S.E.2d at 464. If the jury must treat direct and circumstantial evidence in the same manner, giving both types of evidence the same weight, it could be argued that it

At the time the offense was committed, S.C.Code Ann. § 16–13–230 provided that "[a]ny person committing a breach of trust with a fraudulent intention shall be held guilty of larceny and so shall any person who shall hire or counsel any other person to commit a breach of trust with a fraudulent intention." S.C.Code Ann. § 16–13–230 (1985).[3] "Breach of trust [with fraudulent intent] is larceny after trust, which includes all of the elements of larceny or in common parlance, stealing, except the unlawful taking in the beginning." *State v. Owings,* 205 S.C. 314, 316, 31 S.E.2d 906, 907 (1944); *see also State v. McCann,* 167 S.C. 393, 166 S.E. 411 (1932). The primary difference between larceny and breach of trust is that in "common-law larceny, possession of the property stolen is obtained *unlawfully,* while in breach of trust, the possession is obtained *lawfully." McCann,* 167 S.C. at 398, 166 S.E. at 413 (emphasis original). Thus, in order to prove breach of trust, the State was required to prove that Scott appropriated the deposits and that this appropriation was accompanied by a fraudulent intent to destroy the right of the true owner. *See State v. Butler,* 21 S.C. 353, 355 (1884); *see also State v. Ezzard,* 40 S.C. 312, 324–25, 18 S.E. 1025, 1029 (1894) (Where an agent receives and wrongfully retains money he knows belongs to his principal, with intent to defraud his principal, the agent is guilty of breach of trust with fraudulent intent.)

As noted above, Michael Billie, the territory manager, testified that when he asked about the missing deposit slips, Scott explained that he had been making night deposits. Billie also testified that Scott worked on the days of the missing deposits and that he did not recall seeing an assistant manager at the store on May 7, the date of his first visit. In addition, a Crown auditing supervisor testified that, to the best of his memory, the Hunt Club Road store did not have an

is improper for an appellate court reviewing the denial of a directed verdict motion to require the presence of *substantial* circumstantial evidence but only the presence of *any* direct evidence to conclude that the case was properly submitted to the jury.

**3.** Section 16–13–230 was amended in 1993 to create a three-tiered classification of the crime that specifies whether the offense is a misdemeanor or felony and the maximum term of imprisonment based on the value of the property involved. *See* S.C.Code Ann. § 16–13–230 (Supp.1997).

assistant manager.[4]  David Watson, the Crown auditor, testified that on May 8, Scott left the store with a bank deposit bag and that Scott "was pretty anxious to get to the bank and make a deposit."  From this evidence, the jury reasonably could have concluded that Scott personally had control over each of the deposits.

■  The evidence presented by the State likewise was sufficient to establish the requisite fraudulent intent.  First, Scott's failure to return to the Hunt Club Road store is, in essence, evidence of flight, which can be considered evidence of guilty knowledge and intent.  *See State v. Brownlee*, 318 S.C. 34, 37, 455 S.E.2d 704, 706 (Ct.App.1995).

■  Second, the dates of the late and missing deposits amount to substantial circumstantial evidence of Scott's fraudulent intent.  *See State v. Jordan*, 255 S.C. 86, 90, 177 S.E.2d 464, 465 (1970) ("[F]raudulent intent is a condition of the mind beyond the reach of the senses, usually kept secret and can only be proved by unguarded expressions, conduct and circumstances generally.").  One of the missing deposits was from May 7, the day Billie first visited the Hunt Club Road store.  At that time, Scott explained the missing deposit slips by claiming he had been making night deposits and had yet to get the deposit slips from the bank.  Because there were no deposit slips at the bank, Scott's explanation to Billie was apparently false, and the jury could have considered the false statement to be evidence of Scott's fraudulent intent.  *State v. Thompson*, 278 S.C. 1, 10, 292 S.E.2d 581, 587 (False and conflicting statements are evidence of guilty knowledge and intent;), *cert. denied*, 456 U.S. 938, 102 S.Ct. 1996, 72 L.Ed.2d 458 (1982), *overruled in part on other grounds by State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315 (1991) (abolishing *in*

---

4.  We recognize that these witnesses sometimes equivocated when asked whether Scott worked on the days when deposits were missing and whether the Hunt Club Road store had an assistant manager.  However, as noted above, we are required to view the evidence in the light most favorable to the State.  That the witnesses equivocated goes to their credibility and the weight to be given their testimony, matters solely within the province of the jury.  *See, e.g., State v. Hale*, 284 S.C. 348, 356, 326 S.E.2d 418, 423 (Ct.App.) ("It is the function of the jury, not an appellate court, to judge the credibility of witnesses and the weight to be given to their testimony."), *cert. denied*, 286 S.C. 127, 332 S.E.2d 533 (1985).

*favorem vitae* review). Moreover, five deposits that should have been made on May 1 and May 2 did not appear at the bank until May 8, the day after Scott was put on notice that Crown was investigating his store's bank deposits, and the same day that Scott left the Hunt Club Road store with a bank bag "anxious" to make a deposit. This is strong circumstantial evidence that Scott was responsible for the missing deposits and was attempting to cover up his actions.

We recognize that there was no direct evidence specifically placing each missing deposit in Scott's hands. Nonetheless, we conclude that Scott's guilt could be fairly and logically deduced from the substantial direct and circumstantial evidence outlined above. *See State v. Edwards,* 298 S.C. 272, 379 S.E.2d 888, *cert. denied,* 493 U.S. 895, 110 S.Ct. 246, 107 L.Ed.2d 196 (1989); *cf. Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Evidence is sufficient to send a case to the jury if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.). The trial court, therefore, properly denied Scott's motion for directed verdict.

Accordingly, for the foregoing reasons, Scott's conviction is hereby

**AFFIRMED.**

CURETON and HOWARD, JJ., concur.