527 S.E.2d 367

**The STATE, Respondent,**

v.

**Kurtis JACKSON, Appellant.**

**No. 3106.**

Court of Appeals of South Carolina.

Heard Nov. 2, 1999.

Decided Jan. 31, 2000.

---

Assistant Appellant Defender Melody J. Brown, of SC Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott and Assistant Attorney General Toyya Brawley Gray, all of Columbia; Solicitor Randolph Murdaugh, III, of Hampton, for respondent.

CURETON, Judge:

Kurtis Jackson was convicted of breach of trust with fraudulent intent. The trial court sentenced him to five years imprisonment, suspended on service of five years probation and payment of restitution and a fine. Jackson appeals, arguing the court erred in denying his motions for directed verdict, or alternatively, mistrial. We reverse.

## FACTS/PROCEDURAL HISTORY

On October 1, 1996, Jackson contracted with O.C. Welch Ford Lincoln Mercury, Inc. (Welch) to trade in his 1990 Mazda toward the purchase of a 1993 Nissan Quest automobile. Pursuant to the contract, Welch agreed to handle the $7,000 payoff on the Mazda with funds to be disbursed to the Mazda lienholder, Transouth. When Welch received the money from the Nissan lienholder, however, it mistakenly sent a check for $7,000 to Jackson instead of Transouth. The check, dated October 3, 1996, was stamped on the back:

ENDORSEMENT OF THIS CHECK
GUARANTEES TITLE TO
BE SENT TO
O.C. WELCH
FORD LINCOLN MERCURY, INC.
PO BOX 2087
BEAUFORT, SC 29901

Welch did not discover the error until several days later, when it received a telephone call from Transouth concerning the payoff check. Upon realizing its mistake, Welch immediately attempted to stop payment on the check, but the bank failed

to timely issue the stop payment order due to an unexplained oversight.

On October 16, Jackson visited the Welch office on an unrelated business matter. At that time, Welch's payroll and accounts payable clerk informed Jackson of the mistake. Jackson said he had not received the check, but had a separate mailing address in Savannah, Georgia where the check may have been mailed. He promised to see if the check was at the Savannah address and return it to Welch if he received it. However, Jackson never contacted Welch and Welch was unable to contact Jackson for several weeks. In the interim, Welch sent a duplicate check to Transouth for $7,000 to obtain clear title and enable it to sell the traded-in vehicle.

On November 19, Welch's president contacted Jackson via telephone and asked him to return the check. Jackson responded that he had already cashed the check and spent the money, and that he "wasn't gonna be sending any money to [Welch]."[1] At this point, the president instructed his office manager to file a complaint with the police.

A Beaufort County grand jury indicted Jackson for breach of trust with fraudulent intent pursuant to S.C.Code Ann. § 16–30–230(A) and (B)(3) (Supp.1998), on April 14, 1997. Jackson was tried before a jury on April 23, 1998. At the close of the State's case and again before closing arguments, Jackson moved for a directed verdict based upon the State's failure to prove a trust relationship existed. The trial court denied these motions. The jury convicted Jackson and the trial court sentenced him to five years imprisonment, suspended on service of five years probation, and payment of full restitution and a fine of $600.

## LAW/ANALYSIS

██ Jackson argues the trial court erred in denying his motions for directed verdict because the State failed to prove he committed a breach of trust. We agree.

---

1. A bank official testified Jackson deposited the check into his own account on October 17, though the back of the check itself is stamped October 18. In any event, Jackson transferred $5,000 from this account to an account in Georgia a week later.

■ The State is required to prove every element of a charged offense to obtain a conviction. *State v. Attardo,* 263 S.C. 546, 211 S.E.2d 868 (1975); *State v. Barksdale,* 311 S.C. 210, 428 S.E.2d 498 (Ct.App.1993). In reviewing the denial of a motion for directed verdict, the appellate court must view the evidence in the light most favorable to the State. *State v. Kelsey,* 331 S.C. 50, 502 S.E.2d 63 (1998). However, where the facts of the case, even if proved, do not constitute the alleged criminal conduct, a directed verdict must be granted. *See State v. Lee,* 294 S.C. 461, 365 S.E.2d 734 (1988).

■ The elements which constitute breach of trust with fraudulent intent are not outlined in the statute governing this offense. *See* S.C.Code Ann. § 16–13–230 (1985). However, the crime has been defined through the development of case law. A breach of trust with fraudulent intent "is larceny after trust, which includes all of the elements of larceny or in common parlance, stealing, except the unlawful taking in the beginning." *State v. Owings,* 205 S.C. 314, 316, 31 S.E.2d 906, 907 (1944), *quoted in State v. Scott,* 330 S.C. 125, 130, 497 S.E.2d 735, 738 (Ct.App.1998). Thus, "[t]he primary difference between larceny and breach of trust is that in 'common-law larceny, possession of the property stolen is obtained *unlawfully,* while in breach of trust, the possession is obtained *lawfully.*'" *Scott,* 330 S.C. at 130, 497 S.E.2d at 738 (quoting *State v. McCann,* 167 S.C. 393, 398, 166 S.E. 411, 413 (1932)) (emphasis in original).

■ In the seminal case addressing our breach of trust statute, the supreme court stated, "the object of our [breach of trust] act was simply to enlarge the field of larceny, removing what before might have been a defense for those who received property *in trust* and afterwards fraudulently appropriated it. The question under our act is, *whether the party received the property in trust,* which he afterwards violated. . . ." *State v. Shirer,* 20 S.C. 392, 408 (1884) (citations omitted) (emphasis added). Therefore, the State must prove the existence of a trust relationship to sustain a charge of breach of trust with fraudulent intent. *See State v. LeMaster,* 231 S.C. 321, 98 S.E.2d 756 (1957); William S. McAninch and W. Gaston Fairey, *The Criminal Law of South Carolina* at 264–265 (3d ed.1996). Failure to prove the existence of a trust relationship

will result in a directed verdict of acquittal for the defendant. *See LeMaster*, 231 S.C. 321, 98 S.E.2d 756.

In this case, the State cannot prove the existence of a trust. The State argues a trust was created by virtue of Jackson's endorsement on the back of Welch's check containing the notation concerning the transfer of title, or in the alternative, by Jackson's declaration to Welch's clerk that he would look for and return the check. We disagree.

■ A trust is an "arrangement whereby property is transferred with intention that it be administered by trustee for another's benefit." Black's Law Dictionary 1047 (6th ed.1991). Thus, the transferor of the property must intend that the trustee will act for the transferor's benefit instead of on his own behalf. For example, a man whose daughter-in-law gave him a check for the purpose of paying medical bills may be convicted of breach of trust with fraudulent intent where he used part of the proceeds to pay his own grocery bill. *See State v. McCann*, 167 S.C. 393 166 S.E. 411 (1932). However, the fraudulent conversion of money paid or property delivered by mistake does not constitute a breach of trust because the person who mistakenly gave the money or property to another never reposed trust or confidence in that person. *See* 26 Am.Jur.2d *Embezzlement* § 18 (1996); 29A C.J.S. *Embezzlement* § 14 (1992).[2]

---

2. Most other jurisdictions refer to the crime of breach of trust as embezzlement. *See* William S. McAninch and W. Gaston Fairey, *The Criminal Law of South Carolina* at 262 (3d ed.1996); Patricia Seets Watson and William S. McAninch, *Guide to South Carolina Criminal Law and Procedure* at 273 (5th ed.1997). In *State v. McCann*, 167 S.C. 393, 400, 166 S.E. 411, 414 (1932), our supreme court noted:

Breach of trust with fraudulent intention, by that especial designation, is, so far as we are advised, peculiar to this jurisdiction. In other states, the crime, as known to us, is called by different names, such as "larceny after trust," "larceny by a bailee," "larceny by false pretenses," and very commonly as "embezzlement." All the offenses are regarded as statutory, and one must look to the respective statutes to ascertain a definition of the crime. In text-books, law encyclopedias, and digests, references to decisions concerning these offenses are usually found under the title or subject of "embezzlement." The general purpose running through the statutes creating and defining these crimes is, however, the same; to declare as a crime, and usually as one coming within the classification of larceny, acts which were formerly not deemed to be larceny at common law, because of

In this case, it is undisputed that the $7,000 check Welch issued to Jackson was simply a "very big mistake." Because the check was mistakenly issued to Jackson, he was never entrusted with funds under an obligation to use them for the benefit of the dealership. There was no trust to breach.

The State argues the pre-printed endorsement language on the reverse of the check was evidence of a trust. We disagree. Any trust arising from the stated language on the back of the check could only be read as a trust for the return of the vehicle's title and not the return of the check itself or the $7,000 it represented. Jackson had no authority or ability to effect the transfer of title. Clearly, therefore, the endorsement language could not support a finding of the trust alleged. *See State v. Cody,* 180 S.C. 417, 424, 186 S.E. 165, 167 (1936) (to sustain a conviction for breach of trust with fraudulent intent, the State must "prove the exact trust which has been breached"). Furthermore, the evidence indicates Welch never relied on Jackson to effectuate a transfer of title. Welch sent a duplicate check to Transouth for $7,000 to obtain clear title on the traded vehicle rather than trusting Jackson to pay Transouth and obtain clear title.

In the alternative, the State claims Jackson's statement that he would look for and return the check created a trust that he breached by cashing the check and depositing it in his own account. This argument also fails. Both the State and Welch admit the check issued to Jackson was a mistake. In *Shirer,* the court stated that breach of trust could be found where the defendant "received property in trust and afterwards fraudulently appropriated it." 20 S.C. at 408. Jackson did not receive the property in trust. He received it by mistake. He was not given the funds under any obligation to use them for the benefit of the dealership. Absent the manifest intent to create a trust, there could be no trust or trust relationship to breach. *See State v. LeMaster,* 231 S.C. 321, 98 S.E.2d 756 (1957).

Because the State failed to prove an essential element of the crime charged, namely the existence of a trust, Jackson's

---

the fact that possession of property had been obtained through the consent of the owner.

572

conviction is reversed and the case remanded for the entry of a judgment of acquittal.[3]

**REVERSED.**

HUFF and HOWARD, JJ., concur.

---

**3.** Because we reverse Jackson's conviction due to lack of a trust, we do not reach his second issue on appeal concerning the trial court's denial of his motion for mistrial.