THIS OPINION HAS 
 NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON
 AS PRECEDENT IN 
 ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The State, Respondent,
v.
Thomas W. Spivey, Jr., Appellant.
 
 
 

Appeal From Horry County
 Paula H. Thomas, Circuit Court Judge

Unpublished Opinion No. 2004-UP-483   
Submitted September 15, 2004  Filed September 20, 2004 

AFFIRMED

 
 
 
Acting Chief Attorney Joseph L. Savitz, III, of Columbia, for Appellant.
Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John 
 W. McInitosh, Assistant Deputy Attorney General Charles H. Richardson, and Senior 
 Assistant Attorney General Harold M. Coombs, Jr., all of Columbia; and Solicitor 
 John Gregory Hembree, of Conway, for Respondent.
 
 
 

PER CURIAM:  Thomas W. Spivey, Jr., appeals his conviction and sentence 
 for breach of trust with fraudulent intent.  He asserts the trial court erred 
 by failing to grant his motion for a directed verdict because the State failed 
 to produce substantial circumstantial evidence he was guilty of taking money 
 from his employer.  We affirm. [1] 
 
FACTS
 Don Cauthen hired Spivey to manage Studebakers, a club owned by 
 Cauthen.  One of Spiveys responsibilities was to verify the nightly receipts. 
 After closing, the bartenders added the receipts in their cash register, prepared 
 a deposit slip, and turned it into the manager on duty that night.  The manager 
 then verified the deposit slip and compared it to the register tape, which 
 the bartenders did not have access to prior to calculating their deposit slips.  
 The manager then took the deposit by the bank that night, and Diane Davenport, 
 the bars bookkeeper, collected the statements the following morning.
 Davenport testified that on one occasion in September 1994, she 
 collected the deposits and statement from the bank and noticed several deposit 
 slips written by bartenders that were not processed by the bank.  She compared 
 the slips and found slips that Spivey had written for a lesser amount, which 
 were processed by the bank.  The currency amount on the slip written by Spivey 
 was $150 less than the amount listed by the bartender.
 Cauthen testified that he became suspicious of Spivey and gave Richard Zecchino, 
 a bartender at Studebakers, a $100 bill to place in one of the registers 
 on a night Spivey was working as a manager to determine if Spivey was decreasing 
 the amount on the deposit slips.  At the end of the night, the register should 
 have been $100 over the appropriate amount.  The deposit slip for that night 
 was reduced by $100.  Cauthen testified he confronted Spivey regarding the 
 changed deposit slips and Spivey maintained he changed them because of having 
 to move money between registers.  Cauthen, however, testified that none of 
 the deposit slips had been increased; only decreased.
 Cauthen also testified about the procedures employed in handling the money.  
 He testified that the bartender counted the money, which was then verified 
 by the manager according to the register tape.  If the amount was counted 
 incorrectly or was otherwise different from the tape, the bartender was notified 
 and was the only one permitted to make any changes.  Cauthen testified the 
 manager then took the money to the bank and made the night deposit.  
 State Law Enforcement Division (SLED) forensic examiner Joyce Lauterbach 
 reviewed the deposit slips from January through September 1994 and determined 
 there were 180 altered slips.  Using a video spectral comparator, she determined 
 the majority of the slips contained overwriting or changes from $100 to $300.  
 The total of the changes was found to be $17,730.  It was later determined 
 that Spivey was the manager on duty for all but one instance of a changed 
 deposit slip.
 Zecchino testified he counted the money in his register several times before 
 giving the money to the manager on duty.  He testified that if his calculations 
 were incorrect, he requested a new deposit slip and did not make any changes 
 to the one he had already written.  He also testified that several of his 
 deposit slips that were altered by $100 to $200 were not calculation errors 
 or mistakes.  Additionally, he testified the bartenders frequently did not 
 ring up drinks so the register had more money in it than the tape showed, 
 creating a buffer.  Finally, Zecchino testified that after he was placed in 
 charge of decreasing pour costs and making certain all drinks were accounted 
 for on the registers, Spivey told him to lay off of them a little bit.
 At trial, Spivey moved for a directed verdict on the grounds that when viewing 
 all evidence in the light most favorable to the State, the State failed to 
 produce any evidence that he had taken any property.  The trial court denied 
 the motion.  Spivey renewed the motion at the end of trial, and the court 
 denied the motion again.
 Spivey was convicted of breach of trust with fraudulent intent and sentenced 
 to eight years, suspended on time served with five years probation.  The court 
 also ordered him to pay $13,000 in restitution.
 LAW/ANALYSIS

Spivey argues the
trial court erred in failing to grant his motion for a directed verdict on the
charge of breach of trust with fraudulent intent. 
He maintains the State failed to produce any direct or circumstantial
evidence to show he actually took money as opposed to simply correcting the
deposit slips.  We disagree.

In reviewing the denial of a motion for a directed verdict, we must use 
 the same standard as the trial court and view the evidence in the light 
 most favorable to the State.  State v. Harris, 351 S.C. 643, 653, 
 572 S.E.2d 267, 273 (2002).  The trial court is concerned with the existence 
 of evidence, not its weight.  State v. Gaster, 349 S.C. 545, 555, 
 564 S.E.2d 87, 92 (2002).  The trial judge is required to submit the case 
 to the jury if there is any direct evidence or any substantial circumstantial 
 evidence reasonably tending to prove the guilt of the accused.  State 
 v. Lollis, 343 S.C. 580, 584, 541 S.E.2d 254, 256 (2001).  On the other 
 hand, [a] defendant is entitled to a directed verdict when the State fails 
 to produce any direct or substantial circumstantial evidence of the offense 
 charged.  State v. Rothschild, 351 S.C. 238, 243, 569 S.E.2d 346, 
 348 (2002). 
 Breach of trust with fraudulent intent, commonly called embezzlement in 
 other jurisdictions, has been defined as larceny after trust, which includes 
 all of the elements of larceny or in common parlance, stealing, except the 
 unlawful taking in the beginning.  S.C. Code Ann. § 16-13-230 (Supp. 2003); 
 State v. Owings, 205 S.C. 314, 316, 31 S.E.2d 906, 907 (1944).  The 
 primary difference between larceny and breach of trust is that in common-law 
 larceny, possession of the property stolen is obtained unlawfully, while 
 in breach of trust, the possession is obtained lawfully.  State v. 
 Scott, 330 S.C. 125, 130, 497 S.E.2d 735, 738 (Ct. App. 1998) (quoting 
 State v. McCann, 167 S.C. 393, 398, 166 S.E. 411, 413 (1932)).  Thus, 
 in order to prove breach of trust, the State had to prove Spivey actually 
 took money from the deposits and the appropriation was accompanied by a 
 fraudulent intent to destroy the right of the true owner, Studebakers.
 At trial, several bartenders testified regarding their deposits.  
 Most notably, Zecchino testified he rarely miscounted his money and was 
 certain the amount written on his deposit slip was the same amount he gave 
 to Spivey.  Zecchino also testified that on specific dates he did not recall 
 being told that his count was off.  Finally, he testified that if he erred 
 in his calculations, he was supposed to get a new deposit slip and make 
 the change, not Spivey.
 Cauthen testified he had Zecchino put an extra one hundred dollar 
 bill in one of the registers without Spiveys knowledge.  After the money 
 was counted and turned over to Spivey, the deposit slip was reduced by $100.  
 Cauthen also testified that it was Spiveys duty to make the night deposits.  
 Finally, Davenport testified it was Spiveys handwriting on the altered 
 deposit slips and the forensic examiner verified that there were approximately 
 180 altered slips from January through September of 1994.
 The State, therefore, presented substantial 
 circumstantial evidence that Spivey was improperly reducing the amount on 
 the deposit slips and the money in Spiveys possession that should have 
 been included in the deposit for Studebakers was not deposited in the bank.  
 Accordingly, we find the State offered substantial circumstantial evidence 
 of Spiveys taking of money that belonged to Studebakers and thus, the 
 trial court properly denied Spiveys motion for a directed verdict.
 AFFIRMED.
 STILWELL, BEATTY, and SHORT, JJ., concur.

 
 [1] We decide this case without oral argument pursuant 
 to Rule 215, SCACR.